IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEREMIAH BILLS, RAYMOND PIMINTEL, MICHAEL HINES, and VALENTINE ESQUIVEL, on behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:12-cv-3647 |
| V. | § § | |
| SUPERIOR ENERGY SERVICES, INC. | § § § | |
| Defendant. | § | |

**PLAINTIFFS' COMPLAINT**

Plaintiffs Jeremiah Bills, Raymond Pimintel, Michael Hines, and Valentine Esquivel ("Plaintiffs"), on behalf of themselves and others similarly situated, file this Complaint against Superior Energy Services, Inc. ("Superior" or "Defendant"), showing the Court as follows:

**INTRODUCTION**

1.  Superior misclassified Plaintiffs and Members of the Class as "exempt" from overtime under the Fair Labor Standards Act ("FLSA"),[1] and, as result, deprived them all of overtime pay to which they are entitled under the FLSA. Plaintiffs bring this collective action suit to recover unpaid overtime wages due to them and their similarly situated fellow Operators based out of Yancey, Texas.

**THE PARTIES AND JURISDICTION**

2.  Plaintiff Jeremiah Bills, is a natural person residing in Medina County, Texas. He was employed by Superior within the three years of the filing of this lawsuit. He has standing to file this lawsuit.

---
[1] 29 U.S.C. § 201, *et seq*.

3. Plaintiff Raymond Pimintel, is a natural person residing in Medina County, Texas. He was employed by Superior within the three years of the filing of this lawsuit. He has standing to file this lawsuit.

4. Plaintiff Michael Hines, is a natural person residing in Medina County, Texas. He was employed by Superior within the three years of the filing of this lawsuit. He has standing to file this lawsuit.

5. Plaintiff Valentine Esquivel is a natural person residing in Bexar County, Texas. He was employed by Superior within the three years of the filing of this lawsuit. He has standing to file this lawsuit.

6. The "Members of the Class" are all current and former Operators who were based by Superior in Yancey, Texas during the three-year period preceding the filing of this complaint. All of the "Members of the Class" are similarly situated to Plaintiffs and to one another, within the meaning of section 216(b) of the FLSA.

7. The Defendant, Superior, is headquartered in Houston, Texas. Superior may be served with process through its registered agent: CT Corporation System, 250 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

8. The Court has personal jurisdiction over Superior based on both general and specific jurisdiction. For several years, Superior has done business in the State of Texas, as well as within this district.

9. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, specifically the FLSA.

**FACTUAL AND LEGAL BACKGROUND**

10. According to its website, Superior "serves the drilling, completion and production-related needs of oil and gas companies worldwide through a diversified portfolio of

specialized oilfield services and equipment that are used throughout the economic life cycle of oil and gas wells."[2]  It is headquartered in Houston, Texas.

11. Superior's Operators in Yancey work in the shop, deliver materials for fracking to the Eagle Ford Shale, in Texas, and provide services in the drilling and fracking process, such as pumping and cementing.  As such, the Plaintiffs and Members of the Class – the many other Operators based in the Yancey yard – were not simply truck drivers, but also blue collar workers to whom no FLSA exemption from overtime pay applied.

12. The Yancey yard consists of a distinct group of similarly situated Operators that are appropriately grouped together for analytical purposes and for purposes of bringing a collective action under the FLSA.

13. Plaintiffs typically worked a significant amount of overtime.  So did Members of the Class.  But, Superior did not pay them overtime.  Rather, Plaintiffs and Members of the Class were all paid a flat salary plus occasional bonuses, if any.  Superior represented to Operators that it did not have to pay overtime pay because it paid salary and bonuses – which is entirely wrong under the FLSA.

14. In fact, as explained below, given the job duties of Plaintiffs and Members of the Class, Superior misclassified them all as being exempt from overtime under the FLSA. Accordingly, Superior owes Plaintiffs and the Members of the Class unpaid overtime and other damages provided for by the FLSA.

15. The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must provide compensation for all hours in excess of 40 at a rate of not less than one and one-half times the employee's regular rate. *See* 29 U.S.C. § 207(a)(1).

---

[2] http://www.superiorenergy.com/about/

There are some exemptions to this rule. Under the law, those exemptions are narrowly construed, and the burden of proof to establish them lies with the employer. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). No exemption comes close to applying to the Operators. Superior just flat out misclassified them all. In FLSA cases involving employees who drive, the two exemptions that come up the most often are the "outside sales" and "Motor Carrier Act" exemptions. As explained below, neither of those exemptions apply here.

16.     First, Plaintiffs' were not outside salespersons. Thus, they were not exempt from overtime under the FLSA's "outside sales" exemption, which requires that the employee's primary duty, the making of sales or obtaining orders or contracts for services or for the use of facilities for which a consideration was paid by the client or customer. 29 C.F.R. § 541.500(a); *see, e.g., Miranda-Albino v. Ferrero, Inc.*, 455 F. Supp. 2d 66, 74-79 (D. Puerto Rico 2006) (route driver who was responsible for delivering his employer's product was not an "outside salesman" exempt from overtime requirements of the FLSA); *Miller v. Farmer Bros. Co.*, 150 P.2d 598, 602-05 (Wash. App. 2007) (route sales representatives whose primary duty was to deliver product to customers were not exempt under Washington's "outside sales" exemption from overtime pay, which is similar to the FLSA's "outside sales" exemption). Neither Plaintiffs nor Superior's other Yancey Operators are exempt under the FLSA's "outside sales" exemption, as none of them had, as their primary duty, the making of sales or obtaining orders or contracts for services or for the use of facilities for which a consideration was paid by the client or customer.

17.     Second, Plaintiffs were not exempt under the "Motor Carrier Act" exemption. Under that exemption, the FLSA's overtime requirements do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and

maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). FLSA regulations explain:

> The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job. The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act [ (49 U.S.C. § 31502) ] ..., and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a).

18. Thus, among other requirements, the second requirement of the Motor Carrier Act exemption requires that an employee "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of ... property in interstate ... commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). Neither Plaintiffs nor the other Operators who are Members of the Class satisfy this requirement. While, as Operators who drove commercial motor vehicles, they engaged in activities of a character directly affecting the safety of operation of motor vehicles, they did not engage in the transport of property in interstate commerce. *See, e.g., Butcher v. TSWS, Inc.*, Civil Action No. 4:10–cv–01376, 2011 WL 3793687, at *4-5 (S.D. Tex. Aug. 25, 2011) (concluding that employer did not prove as a matter of law that its drivers satisfied this particular requirement).

19. That Plaintiffs and the other Members of the Class did not engage in the transport of property in interstate commerce is evident from the facts, including that: (a) Superior did not issue Plaintiffs and the other Members of the Class a Federal Motor Carrier Safety Regulations ("FMCSR") Pocketbook; (b) Plaintiffs and the other Members of the Class did not sign an

Interstate Department of Transportation Agreement when they were hired by Superior (or ever); (c) Plaintiffs and the other Members of the Class were not required to record their hours of service or complete driver vehicle inspection reports pursuant to the FMCSR; (d) Plaintiffs and the other Members of the Class were assigned routes within the Eagle Ford Shale – the routes were entirely within the State of Texas, Plaintiffs never drove their trucks outside of the State of Texas, were never asked to drive their trucks outside of the State of Texas, and had no reasonable expectation of crossing state lines; and (e) Superior allowed Operators in Yancey to drive trucks without Commercial Drivers licenses for approximately up to thirty days before they obtained CDLs.  As a result, Plaintiffs and the other Members of the Class did not engage in the transport of property in interstate commerce, and are not exempt under the Motor Carrier Act exemption.  *See, e.g., Butcher v. TSWS, Inc.*, Civil Action No. 4:10–cv–01376, 2011 WL 3793687, at *4-5 (S.D. Tex. Aug. 25, 2011) (concluding that employer did not prove as a matter of law that its Operators satisfied this particular requirement).

20.	The Motor Carrier Act exemption to overtime under the FLSA is to be construed narrowly against employers and applies only to those employees falling "plainly and unmistakably within [the] terms and spirit" of the exemption. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 396 (1960).  The employer bears the burden of proving the Motor Carrier Act exemption applies. *Id*. at 394 n. 11.  For all the reasons set forth in the preceding paragraph, Plaintiffs and Members of the Class were not exempt from overtime under the FLSA's Motor Carrier Act exemption. *Compare Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 469-74 (5th Cir. 2010) (finding group of drivers were exempt under the Motor Carrier Act where, unlike the Plaintiffs, they were issued a FMCSR Pocketbook, signed an Interstate Department of Transportation Agreement, were required to record their hours of service and complete driver

vehicle inspection reports pursuant to the FMCSR, were not assigned dedicated routes entirely within the State of Texas, and therefore could have been reasonably expected to drive in interstate commerce by crossing state lines in their trucks, even if a few of them never actually did so).

21. Because Superior's other Yancey Operators are similarly-situated to Plaintiffs, they cannot be considered exempt under the FLSA's Motor Carrier Act exemption.

22. The bottom line is that Superior misclassified its Yancey, Texas Operators as exempt from overtime. As such, they are entitled to relief under the FLSA.

## FLSA CLAIM FOR OVERTIME PAY

23. This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. § 201, *et. seq*.

24. All conditions precedent, if any, to this suit, have been fulfilled.

25. At all material times, Plaintiffs were employees under the FLSA. 29 U.S.C. § 203(e).

26. At all material times, the Yancey, Texas, Operators were and are similarly situated to Plaintiffs were and are employees under the FLSA. 29 U.S.C. § 203(e).

27. At all material times, Superior was and is an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

28. At all material times, Plaintiffs and Members of the Class routinely worked in excess of 40 hours per seven-day workweek.

29. At all material times, Plaintiffs and Members of the Class routinely worked in excess of 40 hours per seven-day workweek and Superior knew that.

30. At all material times, Plaintiffs and Members of the Class were and are entitled to overtime compensation for hours worked over 40 in a seven-day workweek. 29 U.S.C. § 207(a)(1).

31. At all material times, Superior failed to pay Plaintiffs and Members of the Class overtime compensation for hours worked over 40 in a seven-day workweek.

32. In the three years preceding the filing of this lawsuit, Superior had not paid overtime pay under the FLSA to any Plaintiffs or Members of the Class.

33. During the three years preceding the filing of this lawsuit, Superior has treated the Plaintiffs and Members of the Class as if they were exempt from overtime under the FLSA.

34. Superior's violation of the FLSA was and remains willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness).

35. Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The purpose of liquidated damages is to "compensate an employee for delay in payment." *Reich v. Helicopter Servs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 715–16, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)). A court generally must award the full amount of actual damages as liquidated damages. *Singer*, 324 F.3d at 822–23. If the court concludes that the employer acted in good faith and had reasonable grounds for believing that the conduct did not violate the FLSA, the court may "award no liquidated damages or any amount" up to actual damages. 29 U.S.C. § 260; 29 C.F.R. § 790.22(b); *Singer*, 324 F.3d at 822–23.

36. It is the employer's burden to prove good faith and reasonableness. *Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 227 (5th Cir. 1991); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 925 (E.D. La. 2009). If the jury concludes that the employer has willfully violated the FLSA, the employer cannot demonstrate good faith, and the court must award liquidated damages in the full amount. *Singer*, 324 F.3d at 823 (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)); *Lee*, 937 F.2d at 226. But "[a] finding that defendant's actions were not willful does not preclude a finding that defendant did not act in good faith and on reasonable grounds." *Johnson*, 604 F. Supp. 2d at 926 (citing *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008) ("Because the burden of proof is placed differently, a finding that willfulness was not present may co-exist peacefully with a finding that good faith was not present.")).

37. The employer's burden to demonstrate good faith and a reasonable belief that its actions complied with the FLSA is "substantial." *Singer*, 324 F.3d at 323; *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990). "Good faith cannot be based on ignorance, but instead 'requires some duty to investigate potential liability under the FLSA.'" *Johnson*, 604 F. Supp. 2d at 926 (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468–69 (5th Cir. 1979)). The employer must show that it "had an honest intention to ascertain what the Act requires and to act in accordance with it." *Id*. (citing *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991) (internal citations omitted)). Even if the court concludes that the employer acted reasonably and in good faith, there is a "strong presumption ... in favor of doubling." *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 929 (quoting *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998)). "Doubling of an award is the

norm...." *Id*. (discussing the Family and Medical Leave Act, which uses essentially the same damages scheme as the FLSA).

38. Superior cannot prove "good faith." *See, e.g.*, *Riddle v. Tex-Fin, Inc.*, Civil Action No. H–08–31212011, WL 1103033, at *4 (S.D. Tex. Mar. 22, 2011) (awarding liquidated damages in FLSA case even where the jury did not find the violation to be willful); *Tran v. Thai*, NO. CIV.A. H-08-3650, 2010 WL 5232944, at *6 (S.D. Tex. Dec. 16, 2010) (granting summary judgment for the plaintiff in an FLSA case on the question of "good faith," stating "though the defendants conducted internet research once to determine whether a receptionist was covered by the FLSA and were unsure as to whether they had sufficient gross revenue to be an employer under the FLSA, the defendants have identified no evidence of any specific and ongoing efforts to comply with the FLSA. The plaintiffs are entitled to summary judgment on this defense."); *Bolick v. Mgmt. by Skylane, LLC*, Civ. A. No. H-07-2261, 2008 WL 4589961 (S.D. Tex. Oct. 14, 2008) (testimony from executive that his company "has always endeavored to comply with the terms of all applicable state and federal laws, including the [FLSA]" was insufficient to withstand plaintiffs' motion for summary judgment on liquidated damages because there was "no evidence of any specific ongoing efforts by defendant to comply with the FLSA.").

39. The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . ." *See* 29 U.S.C. § 216(b). *See, e.g., Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 n. 25 (5th Cir. 2006) (affirming attorney's fees award in FLSA case of over $100,000.00).

40. Where, as here, "the employers' actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide

basis." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide class in FLSA misclassification case).

  41. Accordingly, Plaintiffs seek to represent a class under 29 U.S.C. § 216(b) on behalf of:

> "all current and former Operators based in Yancey, Texas who were employed by Superior during the three-year period preceding the filing of this complaint."

## JURY DEMAND

  42. Plaintiffs demand a jury trial.

## DAMAGES AND PRAYER

Plaintiffs asks that the Court issue citation for Superior to appear and answer, and that Plaintiffs and those Operators similarly situated to Plaintiffs be awarded a judgment against Superior for the following:

  a. Actual damages in the amount of unpaid overtime wages under the FLSA;

  b. Liquidated damages under the FLSA;

  c. Prejudgment and postjudgment interest;

  d. Court costs;

  e. Reasonable attorneys' fees under the FLSA; and

  f. All other relief to which Plaintiffs and those Operators similarly situated to Plaintiffs are entitled under the FLSA.

        Respectfully submitted,

        OBERTI SULLIVAN LLP

By:   s/ Edwin Sullivan
       Edwin Sullivan
       State Bar No. 24003024
       S.D. Texas No. 24524
       723 Main Street, Suite 340
       Houston, TX 77002
       (713) 401-3555 – Telephone
       (713) 401-3547 – Facsimile

       ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

Allen R. Vaught
Baron & Budd, P.C.
State Bar No. 24004966
S.D. Texas No. 22757
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile

Mark J. Oberti
State Bar No. 00789951
S.D. Texas No 17918
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEYS FOR PLAINTIFFS